UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES KNIGHT, <br><br> Plaintiff, <br><br> v. <br><br> VITAMIN SHOPPE, INC. EXECUTIVE SEVERANCE PAY POLICY; VITAMIN SHOPPE INDUSTRIES, INC.; TIFFANY McMILLAN-McWATERS, in her capacity as Plan Administrator of the Severance Policy; VITAMIN SHOPPE, INC.; and FRANCHISE GROUP, INC., <br><br> Defendants. | Civil Action No. 2:21-cv-02636 (JXN) <br><br> OPINION |

**NEALS**, District Judge:

This matter comes before the Court on the Partial Motion to Dismiss Counts II and III of Plaintiff's Complaint [ECF No. 5] filed by Defendants Vitamin Shoppe, Inc. Executive Severance Pay Policy (the "Policy"), Vitamin Shoppe Industries, Inc., Tiffany McMillan-McWaters in her capacity as Plan Administrator of the Severance Policy, Vitamin Shoppe, Inc., and Franchise Group, Inc. ("FRG") (collectively "Defendants"), to which Plaintiff Charles Knight ("Plaintiff" or "Knight") filed opposition [ECF No. 10], to which Defendants replied [ECF No. 11]. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1391(b). Venue is proper pursuant to 28 U.S.C. § 1391(b). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

1

I.       FACTUAL BACKGROUND

Plaintiff Knight initiated this action on February 16, 2021, asserting the following four causes of action: (1) denial of severance benefits in violation of the Employee Retirement Income Security Act ("ERISA") (Count I); (2) retaliation in violation of New Jersey Conscientious Employee Protection Act ("CEPA") (Count II); (3) breach of implied contract (Count III); and (4) failure to provide documents in violation of ERISA (Count IV).  *See* Complaint, ECF No. 1.  Defendants moved to dismiss Counts II and III, contending that Plaintiff "can allege no plausible facts showing that his alleged whistle-blowing activities resulted in cognizable retaliatory harm[.]" ECF No. 5-1 at 7.[1]

The following allegations are summarized from the Complaint.  Plaintiff was employed by Vitamin Shoppe as its the Chief Financial Officer ("CFO").  Compl. ¶ 14, ECF No. 1.  In this role, Plaintiff oversaw Vitamin Shoppe's finances and was the employee primarily responsible for preparing and approving press releases concerning the company's finances, among other duties and responsibilities.  *Id.* ¶¶ 15, 23.  Almost seven months after Plaintiff was promoted to CFO, FRG acquired Vitamin Shoppe.  *Id.* ¶ 16.  In the ensuing months, Plaintiff alleges that he experienced a "material adverse change in his function, duties, or responsibilities" such that he effectively fulfilled the role of a corporate controller.  *Id.* ¶¶ 18-19.

In January 2020, Plaintiff complained to Vitamin Shoppe and FRG senior management about the changes and offered them "the opportunity to remedy and cure that material adverse change in accordance with the obligations in the Severance Policy, but they failed to do so."  *Id.* ¶ 19.  In fact, FRG sent a letter to Plaintiff, advising that "Vitamin Shoppe, LLC respectfully disagrees that you have suffered an 'Adverse Change in Status' as defined in the Policy," and that

---

[1] For the sake of clarity, unless otherwise noted, all references to page numbers correspond to the page numbers generated by the ECF system.

it "expect[ed him] to continue performing [his] function, duties and responsibilities as EVP/Chief Financial Officer of Vitamin Shoppe." *Id.* ¶ 20. Plaintiff reiterated in a written communication on March 18, 2020 that he suffered a material adverse change, to which Vitamin Shoppe and FRG again voiced disagreement in an April 1, 2020 letter ("April 2020 Letter"). *Id.* ¶ 21.

On May 5, 2020, FRG issued a press release, without Plaintiff's review or approval, concerning Vitamin Shoppe's financial status. *Id.* ¶ 23. Plaintiff claims that the statements in the Press Release were not true. *Id.* Plaintiff also claims that he "reasonably believed that the false statement in the May 5 Press Release violated the Federal securities laws or regulations," so he notified senior leaders at FRG the following day about his concerns. *Id.* ¶¶ 23-25. After receiving no response, Plaintiff notified the Internal Audit Department about the false statement. *Id.* ¶ 26. The Internal Audit Department later advised Plaintiff that "FRG did not believe the May 5 Press Release contained a material misstatement." *Id.* ¶ 26.

On May 27, 2020[2], Plaintiff filed a claim for severance benefits with Plan Administrator Tiffany McMillan-McWaters ("McMillan-McWaters"). *Id.* ¶ 31. Shortly thereafter, on May 29, 2020, Plaintiff resigned from his position, alleging that he had no other choice because Vitamin Shoppe and FRG did not cure his adverse employment change and that they issued the false Press Release. *Id*. On August 21, 2020, Defendant McMillan-McWaters denied Plaintiff's claim for severance benefits. *Id.* ¶ 32.

Later, in October 2020, Plaintiff appealed from the August 2020 denial of his claim for severance benefits. *Id.* ¶ 35. Defendant McMillan-McWaters denied the appeal in a letter dated

---

[2] In a May 27, 2020 letter from Mariela Markelis Dybner, counsel for Plaintiff, to FRG and Vitamin Shoppe, LLC (attention: Tiffany McMillan-McWaters), entitled therein as Appeal of Denial of Claim and Request for Review, counsel states "Our position remains that [Plaintiff] has suffered an Adverse Change of Status entitling him to severance benefits… as evidenced in the assertions of the January [20,2020] letter and March [18, 2020] letter…." Declaration of Jonathan L. Israel, Ex. 2 at 4, ECF No. 6-2. Counsel references the January and March letters as prior requests for severance benefits.

3

December 11, 2020.  *Id.*   Plaintiff alleges that "McMillan-McWater's December 2020 Determination was made to retaliate against Knight for complaining to Vitamin Shoppe and FRG about the false May 5 Press Release, which he reasonably believed violated Federal securities laws or regulations."  *Id.* ¶ 37.

## II.     LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted).  In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory

4

and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### III.  DISCUSSION

In the Complaint, Plaintiff asserts four causes of action.  Defendants move to dismiss the second and third causes of action, both of which concern Defendants' allegedly retaliatory denial of severance benefits.  The second cause of action (Count II) concerns retaliation in violation of CEPA.  Plaintiff claims that "as a direct and proximate result of Knight's complaints about the false statement in the May 5 Press Release, his claim for severance benefits under the Severance Policy was denied." *Id.* ¶ 48.  Defendant moves to dismiss Count II, arguing that Plaintiff failed to state a claim under CEPA.  ECF No. 5-1 at 13.  More specifically, Defendants argue that Plaintiff's CEPA claim must be dismissed because Plaintiff's material adverse employment change and denial of severance benefits occurred before any protected whistleblowing activity.

The third cause of action (Count III) is a state law claim for breach of implied contract. Plaintiff claims that Defendants breached FRG's Code of Conduct, which forbids retaliation, by denying Plaintiff's claim for severance benefits. *Id.* ¶¶ 54, 60.  Defendants move to dismiss Count III on the basis that Plaintiff failed to allege sufficient facts to demonstrate that Defendants breached FRG's Code of Conduct.  ECF No. 5-1 at 17.  The Court will address these arguments in turn.

#### A. Count II - Retaliation in Violation of CEPA

Count II of Plaintiff's Complaint alleges that Defendants retaliated against Plaintiff because he complained about Defendants' May 5 Press Release, which included false statements that Plaintiff believed violated federal securities laws or regulations, in violation of CEPA.  CEPA

5

is a whistleblower statute that protects *employees* from retaliation. *Chadwick v. St. James Smokehouse, Inc.*, No. 14-2708, 2015 WL 1399121, at *19 (D.N.J. Mar. 26, 2015) (emphasis added). Its overall objective is "to protect society by shielding employees who expose illegal or deleterious activities at the workplace." *Alderiso v. Med. Ctr. of Ocean County*, 167 N.J. 191, 197 (2001) (quoting *Estate of Roach v. TRW, Inc.*, 164 N.J. 598, 610 (2000)). To establish a *prima facie* case under CEPA, a plaintiff must establish:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity ...; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Duong v. Benihana Nat'l Corp.*, No. 21-1088, 2022 WL 1125392, at *3 (3d Cir. Apr. 15, 2022) (citing *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003)). At issue here is whether there is a causal connection between Plaintiff's complaint about the May 5 Press Release and the denial of severance benefits under the Policy.

To demonstrate causation, a plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision." *Robles v. U.S. Env't Universal Servs., Inc.*, 469 F. App'x 104, 107–08 (3d Cir. 2012) (citing *Donofry v. Autotote Sys., Inc.*, 350 N.J. Super. 276, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)). Retaliation may be reasonably inferred from the circumstances surrounding the employment action, *Maimone v. City of Atlantic City*, 188 N.J. 221, 903 A.2d 1055, 1064 (2006), including temporal proximity between the protected activity and the adverse action, *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280–81 (3d Cir. 2000), and inconsistencies or contradictions in the employer's proffered legitimate reasons for its action, *id.* The plaintiff must also establish that the employer knew of the protected activity. *Mancuso v. City of Atlantic City,* 193 F.Supp.2d 789, 810 (D.N.J. 2002).

Defendants contend that Plaintiff's CEPA claim must be dismissed because Plaintiff's material adverse employment change and denial of severance benefits occurred before the whistle-blowing activity. In support of their argument, Defendants submit the April 2020 Letter, which Plaintiff relies on in his Complaint.[3] The April 2020 Letter, in relevant part, provides: "Since we have treated your letter as a claim for purposes of the Policy, and *since that claim is denied*, Mr. Knight has the right to appeal this claim denial . . . ." Israel Decl., Ex. 1 at 6, ECF No. 6-1. Defendants argue that because the denial of benefits occurred more than a month before the May 5 Press Release and four months since Plaintiff alleged that he suffered "material adverse change" in employment, Plaintiff cannot plausibly allege that denial of severance benefits or change in employment was in retaliation to Plaintiff's complaint about potential violations of federal security laws or regulations. The Court agrees.

Here, Plaintiff's whistleblowing activity – Plaintiff's complaint about the May 5 Press Release – occurred more than a month after the April 2020 Letter denying Plaintiff's severance benefits and at least four months after Plaintiff alleges that he experienced a "material adverse change" in his duties and responsibilities as the CFO of Vitamin Shoppe. *See* Compl. ¶¶ 16-17. Because Plaintiff's adverse change in duties and denial of severance benefits occurred prior to his complaints about the May 5 Press Release, Plaintiff cannot plausibly allege that denial of severance

---

[3] On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider the complaint and documents referenced in or attached to the complaint. *See In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."). In the present case, Defendants have attached the April 2020 Letter as an exhibit to the declaration of Jonathan L. Israel in support of the motion to dismiss. Israel Decl., Ex. 1, ECF No. 6-1. Plaintiff's Complaint describes the contents of the April 2020 Letter, including that Defendants "reiterated their disagreement with Knight's position" that he had not suffered an adverse change in status as defined under the Policy. Compl. ¶¶ 20-21. Plaintiff does not challenge the authenticity of the April 2020 Letter. Thus, the court may consider the April 2020 Letter without converting the motion to dismiss to a motion for summary judgment because the April 2020 Letter is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

benefits was in retaliation to his complaint. *See Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 407 (D.N.J. 2008) (granting motion to dismiss CEPA claim where "the meeting that was the source of the alleged retaliation took place in 'early 2006,' before Defendant Davis was appointed the COO of Camden" and implemented the supposedly retaliatory hiring freeze); *see also Robles v. U.S. Env't Universal Servs., Inc.*, 469 F. App'x 104, 108 (3d Cir. 2012) (noting that "[the plaintiff] did not complain to DOL until *after* his termination, so his discharge could not have been retaliation for protected activity.").

To the extent that Plaintiff claims that Defendants August 21, 2020 letter, which reaffirmed denial of benefits, is in retaliation to his complaints about the May 5 Press Release, Plaintiff CEPA claim still fails because Plaintiff was no longer a Vitamin Shoppe employee. In the Complaint, Plaintiff acknowledges that he resigned from Vitamin Shoppe on May 29, 2020, Compl. ¶ 31, and Defendant McMillan-McWaters denied his claim for severance benefits on August 21, 2020, *id.* ¶ 32. As a matter of law, any post-employment conduct by Defendants is not actionable under CEPA. *See Carlson v. Twp. of Lower Alloways Creek*, No. CIV. 06-3779 (RBK), 2008 WL 2446804, at *3 (D.N.J. June 16, 2008) ("Since Plaintiff's proposed amendment addresses a claim that took place after he was terminated and was no longer in an employment relationship with Defendants, Plaintiff's CEPA claim is futile."); *see also Zubrycky v. ASA Apple, Inc.*, 381 N.J. Super. 162, 168, (App. Div. 2005) ("We find no merit in plaintiff's claim that defendant violated CEPA by opposing his unemployment claim, because defendant's action occurred *after* plaintiff resigned, and CEPA does not apply to post-employment conduct."); *Manee v. Edgewood Properties, Inc.*, 2007 WL 268248, at *11 (N.J. App. Div. February 1, 2007) ("CEPA does not impose liability upon a former employer for alleged post-employment actions that affect a former

employee"). Because the August 21, 2020 denial occurred after Plaintiff resigned from employment with Vitamin Shoppe, Plaintiff's CEPA claim must be dismissed.[4]

Notwithstanding the above, Plaintiff submits that the Court cannot resolve issues of intent or the timing of retaliatory action at the motion to dismiss stage. Plaintiff does not submit any persuasive or binding authority, however, in support of such a position. When accepting Plaintiff's claims as true, *see Phillips*, 515 F.3d at 231, the Court finds that Plaintiff's CEPA claim is either (i) based on the April 2020 Letter that predates the complaints about the May 5 Press Release, or (ii) based on the alleged "retaliatory" August 21, 2020 denial of benefits that postdates his employment. As discussed above, in either case, Plaintiff cannot sufficiently allege a CEPA claim. Accordingly, Plaintiff's CEPA claim (Count II) must be dismissed with prejudice.

### B. Count III – Breach of Implied Contract

Count III of Plaintiff's Complaint alleges a claim for breach of implied contract against Defendants Vitamin Shoppe, VS Industries and FRG. Compl. ¶¶ 51-61. Defendants seek to dismiss this cause of action, contending that Plaintiff fails to allege an implied breach of contract claim because he has not alleged sufficient facts to demonstrate a breach or damages. ECF No. 5-1 at 17. More specifically, Defendants contend that "Knight's implied contract claim still fails to allege either a breach or damages flowing therefrom because Knight explicitly premises his claim on a denial of benefits that proceeded his alleged complaint about the May 5 Press Release." *See id.* at 17-18 (citing Compl. ¶ 60).

---

[4] Although this point was raised in Defendants' moving brief, ECF No. 5-1 at 10, the Court notes that Plaintiff did not contest this argument in his opposition. Defendants contend that Plaintiff has abandoned this claim. *See* ECF No. 11 at 5. While Plaintiff may not have addressed this particular argument in his opposition, Plaintiff did offer a response to the dismissal of this claim. Therefore, Plaintiff's lack of response to this particular argument does not result in a waiver of the claim. *See Newton-Haskoor v. Coface N. Am.*, No. CIV.A. 11-3931 JAP, 2012 WL 1813102, at *7 (D.N.J. May 17, 2012), *aff'd,* 524 F. App'x 808 (3d Cir. 2013).

9

To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F.Supp.2d 552, 561 (D.N.J. 2002)). At issue, here, is whether Plaintiff has alleged sufficient facts to establish that Defendants breached the contract and Plaintiff suffered damages as a result of the breach.

Assuming that FRG's Code of Conduct is a valid contract between the parties, Plaintiff has not sufficiently alleged that Defendants breached the contract by failing to pay severance benefits. As noted in the Complaint, the "Code of Conduct promises employees that '[t]he Company and this Code strictly forbid *retaliation* against anyone who raises a concern or makes a report in good faith.'" Compl. ¶ 54 (emphasis added). Plaintiff alleges that Defendants breached the Code of Conduct by denying Plaintiff's claim for severance benefits in retaliation to Plaintiff's good faith complaint about the May 5 Press Release. *Id.* ¶ 60. As noted above, Plaintiff first raised his complaints regarding the May 5 Press Release on May 6, 2020, over one month after he received the April 2020 Letter advising him that he was not entitled to any severance benefits under the Policy, and over four months since he complained that he suffered "material adverse change" in employment. *See id.* ¶¶ 16-17, 21, 25. Accepting Plaintiff's allegations as true, the denial of severance benefits cannot serve as a breach of contract under the terms of the Code of Conduct because the denial of severance benefits occurred prior to any "good faith" complaints about the May 5 Press Release and not in retaliation to the same.

Moreover, if the alleged retaliatory conduct occurred in August 2020 as Plaintiff contends, Plaintiff's claim still fails because he was no longer an employee of Vitamin Shoppe when the alleged denial was issued. As noted in Plaintiff's Complaint, FRG's Code of Conduct expressly

provides that the "Code of Conduct promises *employees* that '[t]he Company and this Code strictly forbid retaliation against anyone who raises a concern or makes a report in good faith.'"  Compl. ¶ 54 (emphasis added).  According to the Complaint, Plaintiff resigned from his position with Vitamin Shoppe in May 2020, nearly three months before the alleged retaliatory activity occurred in August 2020.  *See id.* ¶ 31.  As a result, the Code of Conduct did not apply to Plaintiff in August 2020, because he was no longer an employee.  Accordingly, Plaintiff's breach of implied contract claim (Count III) must be dismissed with prejudice.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss Counts II and III of the Complaint [ECF No. 5] is **GRANTED**.  Count II and III are dismissed with prejudice.[5]  An appropriate Order accompanies this Opinion.

DATED: August 23, 2022

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge

---

[5] Having fully reviewed Plaintiff's Complaint and opposition to Defendants' partial motion to dismiss, the Court is not persuaded that an amended pleading will save Plaintiff's claims.